COLUMBIA GENERAL TERM, June, 1848.    *Harris, Watson, and Barculo,* Justices.

## JORDAN *vs.* HYATT and others.

An assessment made by a municipal corporation, upon the lands of private persons, to raise money for a public purpose, without any notice being given to the owners of the property assessed, is illegal, and is not binding upon the owners.

*It seems* that the clause of the constitution which prohibits the taking of private property without due process of law, refers to a transfer of property from one person to another; and not to the taking of private property for *public use.* It means that the legislature shall not have the power to take the property of one person and give it to another, by mere enactment; but that, to effect such a change, there must be a suit or proceeding in some court, or before some magistrate, and a judgment thereon according to due course of law.

Whether there is any distinction between taking the *land* of a private person for public use, and taking *money*, by means of an assessment, to pay for land taken? *Quære.    Per* BARCULO, J.

A municipal corporation, empowered by its charter to order lands, directed to be sold for assessments, to be sold for a term of years, has no authority to direct the *undivided half* of a lot to be sold in that manner.

A submission to arbitrators of the subject matter of a suit for a partition, commenced by one of the parties, is a discontinuance of such suit.

An award, made without any appointment of a time or place for a hearing having been made, or any notice given to the parties, and without their being present, or having an opportunity to be heard before the arbitrators, is void.

An award made under such circumstances is in the nature of a judgment of an inferior court which has not obtained jurisdiction of the parties. The arbitrators are bound to give the parties an opportunity of being heard, in relation to the matters submitted; and without this, they have no authority to decide the question in controversy.

In such a case, it is not necessary to show fraud, or corruption, in order to set aside the award.

IN EQUITY. This was a bill for a partition of certain real estate consisting of two lots of land situate in the city of Hudson, of which the plaintiff claimed to be seised in fee of an equal undivided moiety. The bill alleged that Ann Catharine Hyatt, deceased, was the wife of James Hyatt, who is also dead, and that in her lifetime she was seised in fee of the premises; that she died on or about the 25th of December, 1825, intestate, leaving her husband surviving her; who after her death held

Jordan v. Hyatt.

and possessed the premises as tenant by the curtesy; that he died on the 26th of August, 1836. That Ann Catharine Hyatt left two children, Edward Hyatt and Amelia Hyatt; who, at her decease, became seised in fee simple of the premises, as tenants in common, subject to the estate of their father James Hyatt, as tenant by the curtesy, and that upon his death they became seised in fee as tenants in common, as heirs at law of their mother. That Edward Hyatt, being indebted to one Henry Smith in the sum of $854,42, in order to secure the payment thereof, on the 28th of October, 1835, he, together with his wife, executed a mortgage upon his undivided share of the premises, to Smith, which was duly acknowledged and recorded on the 30th of the same month. That on the 5th of May, 1838, Smith assigned the said mortgage to Abijah White and Levi Haxton, administrators of Jonas White, deceased, which assignment was recorded on the 24th of November, 1838. That on the 24th of March, 1841, White and Haxton filed their bill to foreclose the mortgage, and that a decree was subsequently made, in that suit, for the foreclosure of the mortgage, and the sale of the mortgaged premises. That on the 4th of August, 1841, the mortgaged premises were sold, by and under the direction of a master in chancery, and were purchased by Henry Smith, subject to the assessment and sale or lease given by the corporation of Hudson to Platt as hereafter mentioned; and that a deed was thereupon executed to Smith, by the master. That Henry Smith being indebted to various individuals, on the 12th of October, 1844, he conveyed all his real estate, including the premises in question, to Lewis Little, upon certain trusts and for certain purposes therein expressed, among which was the trust to sell and dispose of the same at public or private sale. That by virtue of this conveyance, Little became entitled to, and held and possessed, the one equal undivided moiety of the premises, in fee, as tenant in common with Amelia Hyatt; and that on the 21st of March, 1846, Little and his wife sold and conveyed the same to the plaintiff, by deed, which was acknowledged on the same day. That on or about the 19th of December, 1838, by virtue of the act of the legislature entitled

" An act relative to the city of Hudson," passed April 4, 1829, the first piece of land described in the bill was assessed $255, and the second piece $85, for paying in part the owners of land taken and appropriated by the common council of the city of Hudson for Franklin Square; which assessment being returned and ratified by the common council, was a lien upon the premises assessed. That after the assessment had been made, and not having been complied with, or paid, the common council, according to the provisions of the aforesaid act, advertised the premises on the 16th of December, 1839, in a public newspaper printed at Hudson, pursuant to the requirements of the act. That on the 27th of January, 1841, Amelia Hyatt paid one half of the assessments, with interest and costs, and her undivided moiety of the premises was released from those assessments; and the other half of such assessments, with interest and costs, remaining unpaid, the undivided half of the premises was sold at public auction, on the 1st of February, 1841, to pay the same; and that Israel Platt bid it off, and became the purchaser thereof, for the term of one thousand years. That in pursuance of such sale, the common council, on the 19th of February, 1841, executed leases to Platt of the undivided part bid off by him, for 1000 years. That on the 12th of May, 1846, the plaintiff, for a valuable consideration, purchased such leases of Platt, who executed and acknowledged assignments thereof to him. That the plaintiff, by virtue of the deed from Little, and those leases, became seised in fee of the undivided half of the premises, and that the defendant Amelia Hyatt was seised of the other undivided half; so that they were seised of the premises as tenants in common. That James Hyatt being in possession as tenant by the curtesy, he, on the 25th of April, 1832, conveyed the premises to A. L. Jordan in trust to sell and dispose of the same, who thereby became entitled to, and possessed of the estate of James Hyatt therein, as tenant by the curtesy. That Jordan and wife, in fulfilment and pursuance of the trust contained in the deed to him, prior to the 11th of May, 1833, sold and conveyed all the right, title and interest of James Hyatt in said premises, to James Mellen. And that on the 11th of May, 1833, Mellen

and wife sold and conveyed the same to Henry Smith. That Smith purchased such right, title and interest of James Hyatt, at the request and as the trustee, and for the benefit of Amelia Hyatt and Edward Hyatt. That on the 12th of August, 1833, he, together with Amelia Hyatt and Edward Hyatt, and at their request, executed a mortgage to T. E. Beekman upon the premises, to secure the payment of $1000, which sum was raised for the benefit of Amelia and Edward Hyatt, for the purpose of paying Mellen for the right of James Hyatt conveyed by Mellen to Smith on the 11th of May, 1833. That on the 28th of October, 1835, Smith and wife conveyed the premises to Edward and Amelia Hyatt. That on the 6th of January, 1840, Beekman filed a bill to foreclose his mortgage, and that a decretal order was made for the sale of the premises. That the sum of $1064,70, together with the costs of the foreclosure, was due, and that the decretal order was a lien upon the premises, for that amount, on the 9th of July, 1841. That on that day Beekman assigned the decretal order to George F. Barnard; but whether Barnard paid his own money or the money of Amelia and Edward Hyatt, did not appear. That the dower of the wife of Henry Smith has been extinguished, by reason of the sale by the common council to Platt. That the contingent right of dower of the wife of Edward Hyatt was extinguished by the master's sale to Henry Smith; she having signed the mortgage. That the premises were so situated that a partition could not be made without a sale. That the plaintiff was desirous that a partition should be made, if practicable, but if not, then that a sale should be ordered, and the proceeds be divided among the owners of the premises.

Most of the facts stated in the bill were admitted in the answer of the defendant Amelia Hyatt. But she alleged that on the 14th of October, 1841, she and Smith, being seised in fee of the premises as tenants in common, she filed her bill against Smith, Barnard, and the Mayor, Recorder and Commonalty of Hudson, for a partition thereof. That a subpœna was issued, and duly served. That after the filing of that bill, and in the month of March, 1842, the defendant, by the urgent solicitation

Jordan *v.* Hyatt.

of Smith and of the plaintiff in this suit, who was then counsel for Smith, entered into an arrangement with Smith, for a partition of the premises, and they executed an agreement in writing, under their hands and seals, for that purpose, by which they appointed Robert A. Barnard and Charles McArthur commissioners to make such partition; and the parties bound themselves to stand to and abide by the partition, which the commissioners should make, and to execute mutual releases to each other. That after the making of this agreement, and on or about the 16th of April, 1842, Barnard and McArthur proceeded to, and did, make partition, and delivered their award in writing, under their hands. That after such partition the defendant and Smith each entered upon and took possession of the portion set off to him. That the defendant offered to release and quit claim to Smith the part awarded to him, and requested Smith to execute to her a release or quit claim of the portion awarded to her, but that he neglected so to do. And the defendant insisted that upon the making of the award she acquired, and had ever since held and possessed the equitable title of the premises set off to her, and that Smith became the equitable owner, in fee, of the premises set off to him. That the partition suit so commenced by the defendant against Smith and others was still pending, and was a bar to the present bill; and that the plaintiff in this suit had notice of that suit, and of the award. That in the laying out of Franklin Square, and in assessing the premises, and in the subsequent proceedings and sale, the corporation of Hudson pretended to act under the act entitled "an act relating to the city of Hudson," passed April 4, 1829; but the defendant alleged that no notice was ever given, by the corporation, of the intention to assess the premises, or of the time and place when and where said assessment would be made; nor was any notice of such intention given to the defendant and Edward Hyatt, or any other person, as she is informed. That neither the defendant nor Edward Hyatt had any opportunity of being present when the assessment was laid, nor was any demand made by the corporation, or any one in their behalf, for the payment of the

Jordan v. Hyatt.

assessment. That the whole proceeding in laying out said public square, and in laying the assessments, and the subsequent advertisement and sale of the undivided half of the premises, were contrary to law, and the constitution of this state, and void, and that Platt and the plaintiff acquired no title thereby.

A general replication to this answer was filed; and the cause was heard on pleadings and proofs, as to the defendant Amelia Hyatt. The defendant Barnard suffered the bill to be taken as confessed as to him.

*J. C. Newkirk,* for the plaintiff.

*E. P. Cowles,* for the defendant.

*By the Court,* BARCULO, J. The first question to be examined is, whether the sale, made by the common council of the city of Hudson, of the premises in question, to Israel Platt was valid. It is contended that the assessment under which the sale was made was illegal and unconstitutional; that it was in violation of that provision of the constitution which declares that no person shall be deprived of property *without due process of law.* (*Const. art.* 7, § 7.) It is conceded that the assessment was made without any notice to the owners; and for the purpose of raising money to pay for land taken and appropriated by the common council for a public square. The city charter authorizes the common council to take lands for such purpose. "And in order to provide for the payment thereof, the common council shall cause the same to be assessed upon the owners or occupants of lots intended to be benefited by such improvement, and collected in *the same manner in which estimates and assessments are directed to be made and collected in and by the preceding sections of this act.*" (§ 30.) The 28th section provides for the making estimates and assessments by five disinterested freeholders, appointed by the common council; but there is nothing in the act requiring any notice to be given to the owners of land assessed for benefits.

It seems to be the better opinion that the clause of the constitution which prohibits the taking of property without due process of law, refers to a transfer of property from one person to another; and not to the taking of private property for *public use.* It means that the legislature shall not have the power to take the property of one person and give it to another, by mere enactment; but that to effect such a change, there must be a suit or proceeding in some court, or before some magistrate, and a judgment thereon according to due course of law. (*In the matter of John and Cherry streets,* 19 *Wend.* 659. *Taylor* v. *Porter,* 4 *Hill,* 140.)

In the present case the property was not taken for private use. The assessment was made to pay for the public square; and if it falls within the section of the constitution referred to, at all, it must be the last clause, which declares that private property shall not be taken for public use *without just compensation.* In regard to the owner of the land taken for the square, this clause is clearly applicable; and it cannot be pretended that the common council had a right to take his land without making just compensation. But it is said that there is a distinction between taking the *land* for public use, and taking *money* to pay for the land; and that the latter is a mere exercise of the taxing power. Such is the reasoning of Justice Beardsley in *Striker* v. *Kelly,* (7 *Hill,* 24,) and of the chancellor in *Livingston* v. *The Mayor, &c. of New-York,* (8 *Wend.* 101, 2,) and of Chief Justice Savage in *Owners of ground, &c.* v. *The Mayor, &c. of Albany,* (15 *Id,* 374.) I must, however, confess that this reasoning has never been satisfactory to my mind. I am unable to perceive why it is not as much *taking* property, to take $500 from a man in money, as to take the same value in land; and why it is not as much devoting it to *public use,* to apply the money in payment for land, as to use the land itself for public purposes. It seems to me that it would be better to say that in both cases the property is taken for public use. In the one case, the just compensation is made by payment of the value of the land; and in the other, by benefits equal in value to the amount of money taken. A

Jordan v. Hyatt.

similar view of this subject was taken by Justice Nelson in *The Canal Bank of Albany* v. *Mayor, &c. of Albany*, (9 *Wend.* 251,) where he says: " It is somewhat remarkable that the law should have been so careful in securing the rights of the parties whose lands are taken for public purposes, and providing a full compensation therefor, and, at the same time, so utterly neglectful of the rights of those whose lands are assessed to pay such compensation. It is obvious that the amount of *private property appropriated to public purposes* is just as great in one instance as in the other. The rights of one class of individuals are secured by the award of damages equal to the value of the lands taken ; those of the other, by the assessment upon their lands to the amount *not exceeding* the benefit." It is proper to remark that an adjudication upon the distinct point was not necessary to the decision of any of the cases above cited ; and the question may therefore fairly be considered open.

It is certainly somewhat difficult to draw the dividing line, between that taking of private property for public use which falls within the legitimate exercise of the taxing power, and that which requires a just compensation, within the meaning of the constitution. It may perhaps be doubted whether any such distinction exists. Why may not the ordinary tax payer be said to receive a just compensation in the security and protection which the state throws around him ? He pays taxes to defray the expenses of government ; of the administration of the laws ; for the purposes of education ; for the repairing and construction of roads and bridges. Why may not he be said to be justly compensated, by sharing in the benefit of these measures ? I see no greater impropriety in this, than in allowing land to be taken for public use and making a *just compensation*, by estimating the *benefits* which are to result to the owner's remaining property, as was done in the case of *Livingston* v. *The Mayor, &c. of New-York*, by the court of errors.

Whatever view may be taken of this branch of the subject, it seems to me, that the assessment in this case must be deemed invalid, because no notice was given to the owners of

Jordan v. Hyatt.

the land assessed. They had no opportunity whatever of being heard. They were assessed a large sum by an *ex parte* proceeding. This is contrary to every principle of justice and judicial proceedings. If this is to be deemed a taking of private property for public use, the case of the *Owners of ground, &c.* v. *The Mayor, &c. of Albany*, is an authority showing that *notice* must be given. If this mode of assessment is to be considered nothing more than a liberal exercise of the taxing power, notice should be given. For even in the ordinary case of taxation for town and county expenses, notice is required to be given, and every tax payer has the right to reduce his tax by his own affidavit, or other proof. He has an opportunity of being heard, before his property is taken. (1 *R. S.* 392, §§ 15, 19, 20, 21, 22, 23.) My conclusion, therefore, is, that the assessment was illegal, and not binding upon the owners, by reason of its being made without notice. The sale also was improperly made. The charter authorizes a sale of the lot for a term of years. The common council sold an *undivided* half of the lot. This was not pursuing their authority strictly, as required by the adjudged cases. There are obvious reasons why the sale of an undivided share of premises for a term of years might be highly prejudicial to the owner.

For these reasons the plaintiff cannot rely on the title set up under the corporation sale.

The submission to arbitrators was clearly a discontinuance of the suit commenced by Amelia Hyatt, in 1842. (*Smith* v. *Barse,* 2 *Hill,* 387. *Towns* v. *Wilcox,* 12 *Wend.* 503.) That suit therefore cannot be set up as a bar to the present suit.

The remaining inquiry is, as to the validity of the award made by the arbitrators on the 16th of April, 1842. It does not appear that the award was ever sanctioned or acted on by the parties. It seems to have been made without any appointment of a time or place for a hearing, without any notice to the parties; and without their being present, or having an opportunity of being heard, before the arbitrators. An award made under such circumstances is void. It is in the nature of a judgment of an inferior court which has not obtained jurisdiction of the

parties. It is not necessary to show fraud or corruption, in such a case, to set aside an award. The arbitrators are bound to give the parties an opportunity of being heard in relation to the matters submitted; and without this, they have no *authority* to decide the question in controversy. This rule is applicable as well to submissions at common law as to those under the statute. It is nothing more nor less than the application of the plain principle of justice, running through all judicial proceedings, that a party is never to be condemned unheard. (*Elmendorf* v. *Harris, 23 Wend. 628, and cases there cited.*)

The plaintiff's claim is then left to stand upon the title derived through the assignment of Smith to Little, and his conveyance to the plaintiff; by which the latter became the owner of the undivided half part of the premises in question, as tenant in common with Amelia Hyatt, the defendant.

There must therefore be a reference to ascertain whether the premises can be divided, &c. unless the parties agree that a partition can be made; in which case a commission must issue for that purpose.

