ANDREW BLAZIER and HENRY BURDEN, Appellants,
v. JACOB MILLER, Respondent.

*Board of health of Syracuse — power of, to appoint inspector of milk — destruction
of impure milk*

The board of health of the city of Syracuse appointed an inspector of milk, and
authorized him to seize and examine all offered for sale in that city, upon
having reasonable cause to believe that the same was below the standard
quality of pure and wholesome milk, and to destroy the same if proved by him
to be below such standard.

In an action to recover the value of milk so seized and destroyed, *held*, that the
board of health had power to pass such ordinance, and that the inspector of
milk was protected thereby while acting thereunder.

Appeal from a judgment in favor of the defendant, entered on a
verdict in the Onondaga County Court, and also from an order,
denying a motion for a new trial on the minutes.

The action was brought originally in a Justice's Court to recover
damages for unlawfully taking and detaining plaintiffs' milk wagon
horse and milk cans and destroying their milk in the city of Syracuse.
The defendant set up, by way of justification, an ordinance of the
board of health of said city appointing him inspector of milk "with
authority to seize, take into his possession and examine all milk offered
for sale, or brought for sale into said city, upon having reasonable
cause to believe that said milk is below the standard quality of pure
and wholesome milk, and to destroy the same if found by him to
be below such standard." The justice rendered a judgment in
favor of the plaintiffs. The defendant appealed to the County
Court where the case was tried before a jury, and the defendant had
a verdict.

*R. H. Gardner*, for the appellants.

*W. E. Lansing*, for the respondent.

Smith, J.:

The question whether the milk seized and destroyed by the defend-
ant was pure and wholesome was litigated in the County Court, and
the jury found that it was not pure and wholesome. The testimony

also warranted the conclusion that the plaintiffs brought the milk into the city for sale, and had it there for that purpose, at the time of its seizure. The defendant, therefore, was justified in taking the milk and destroying it, provided the ordinance under which he acted was valid. The plaintiffs' counsel challenges the validity of the ordinance on several grounds, the principal of which is that the ordinance violates the provision of the State Constitution, which declares that no person shall be deprived of his life, liberty or property without due process of law. (Art. 1, § 6.)

The power of the legislature to prohibit the sale of impure and unwholesome articles of food, and to provide for the confiscation and destruction of such articles on their being offered for sale in open market, cannot be questioned. Legislation of that character (of which quarantine laws, by which not only is property destroyed, but personal liberty restrained, are frequent instances) is the execution and regulation, by the body politic, of the same power of self-preservation which is possessed by individuals at common law. Its justification rests upon the immediate and imminent danger to life and health, which it is designed to avert. The statute which was condemned by the Court of Appeals, in the case of *Wynehamer* v. *The People* (3 Kern., 378), relied upon by the appellants' counsel in the case at bar, was of a very different character. The provisions of that act substantially destroyed, as the court held, the property in intoxicating liquors owned and possessed by persons within the State when the act took effect, without reference to the question whether such liquors were offered, or intended to be offered, for sale as a beverage. The opinions of the judges in that case present clearly the distinction between that act and statutes enacted to preserve the public health.

It has been held repeatedly, that the legislature may confer upon any department of a municipal government the authority to enact and enforce ordinances. The power results from and is incidental to its power to create and maintain municipal organizations (*The People ex rel. Cox* v. *The Justices of the Court of Special Sessions*, 14 S. C. N. Y. [7 Hun], 214, and cases there cited by DANIELS, J.), and the instances are numerous, in which the power has been given to boards of health, to enact and enforce such ordinances and regulations as the exigencies of the public health should appear to require.

The city of Syracuse, under its charter, has a board of health possessing all the powers and authority of boards of health in any of the cities or villages in the State. (Laws 1857, vol. 1, p. 120, chap. 63, tit. 5, § 14.) By the terms of the act for " the preservation of the public health," passed in 1850, the several boards of health in any city or village in this State have power, among other things, to make regulations, in their discretion, concerning the suppression and removal of nuisances, " and all such other regulations as they shall think necessary and proper 'for the preservation of the public health." (Laws of 1850, chap. 324, p. 691, § 3, sub. 3.)

It is apparent, therefore, that the subject of prohibiting the sale of impure and unwholesome milk within the limits of the city is one, concerning which the board of health of Syracuse has power to act; and that the ordinance made by them, under which the defendant seeks to justify, is valid, unless the mode of procedure which it prescribes is unauthorized and illegal. No question was made on the argument, but that the board had power to appoint an agent to execute specific duties assigned to him, provided the duties were such as the board had authority to impose. The appointment of the defendant as milk inspector is a proper exercise of the power. The ordinance authorizes the milk inspector to seize milk offered for sale, and to destroy it on finding it to be below the proper standard, without providing for notice to the owner. If the functions of the inspector were judicial in their nature, the validity of the ordinance would be questionable. It is a plain principle of justice, applicable to all judicial proceedings, that no person shall suffer judgment against him without an opportunity to be heard. (*Commissioners of Kinderhook* v. *Claw.*, 15 Johns., 537; *Owners of Ground* v. *Mayor of Albany*, 15 Wend., 374; *Elmendorf* v. *Harris*, 23 id., 628; *Jordan* v. *Hyatt*, 3 Barb., 282; *Ireland* v. *City of Rochester*, 51 id., 430.) But the functions of the milk inspector, under the ordinance in question, are simply ministerial. He is to destroy the milk if it is found to be below the prescribed standard; otherwise, not. In order to ascertain whether it is below the standard, he has only to measure its specific gravity by an instrument made for the purpose. He has no discretion in the matter. It is immaterial, therefore, whether the owner is present or not. If present, he could do nothing to change the result. Notice, consequently, would not

avail him, and so need not be given. (*Bouton* v. *Neilson*, 3 Johns., 474; *Beach* v. *Saunders*, 9 id., 229.) Besides, in this case, one of the plaintiffs had notice, and was present when the milk was tested. The ordinance, therefore, was valid, and was a complete justification to the defendant.

The exceptions taken at the trial to the charge of the judge, and to his rulings upon the admission or rejection of testimony, have been examined, and they present no other questions which require to be discussed.

The judgment and order of the County Court should be affirmed.

MULLIN, P. J., and TALCOTT, J., concurred.

Judgment and order of County Court affirmed.