## IN THE MATTER OF THE PETITION OF JAMES VAN BUREN TO VACATE AN ASSESSMENT.

The only power conferred upon the board of health by the provisions of the act of 1871, "to provide for the proper drainage of lands," in the city of New York (chap. 566), is to direct the drainage of land by means other than sewers, where surface water, injurious to public health, could not be carried off by the sewers; and to assess the expense upon lands benefited by the drain, the area of assessment being restricted to the lands between the drain and the adjacent streets and avenues.

The commissioner of public works, in pursuance of a requisition of the board of health, directing him to cause the lands within certain bounds, which included many blocks and about seventy acres of sunken land, to be drained by other means than sewers, caused drains to be dug and the lands to be filled in, the whole cost of the improvement being about $308,000, of which only $5,491.20 was for drains; $248,534.27 of the cost was assessed in one assessment upon the property owners, blocks of land being assessed through which the drains did not run. *Held*, that said act did not authorize such improvement; also that, even if the filling in could be claimed as merely an incident to the construction of the drains, the assessment was illegal, as there was no authority for mingling in one assessment the costs of drains running between different streets.

(Argued November 28, 1879; decided January 13, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, affirming an order of Special Term, which vacated an assessment upon certain lots owned by the petitioner in the city of New York. (Reported below, 17 Hun, 527.)

The facts appear sufficiently in the opinion.

*William C. Whitney*, for appellant. The presumption is in favor of the regularity of assessments as of all other acts of public officers, and the burden of proof is upon the petitioner to show grounds for the vacation. (*In re Hebrew Ben. O. Asylum*, 70 N. Y., 476; *In re Second Ave. Bapt. Church*, id., 613; *In re Bassford*, 50 id., 512; *In re Williamson*, 3 Hun, 65, 68; *Bigelow* v. *City Boston*, 120 Mass., 326; *Jordan D. and D. Ass'n* v. *Wagoner*, 33 Ind., 50.) This is not a case in which, as matter of law, the city was

under any obligation to acquire from the owners the right to perform this work. (*People* v. *Nearing*, 27 N. Y., 306; *People* v. *Haines*, 49 id., 587; *In re Rhinelander*, 68 id., 165; *In re Ryers*, 72 id., 1.) A similar power to that exercised in this case has been possessed by the city under the statutes of this State at least since 1813. (Act of 1813, §§ 267, 270, 271.) The city had the right to order the improvement and lay the assessment. (Cooley on Taxation, 402; *Bliss* v. *Kraus*, 16 Ohio St., 55; *Sessions* v. *Crunkilton*, 26 id., 349; *O'Reilly* v. *The Draining Co.*, 32 Ind., 169; *Commonwealth* v. *Alger*, 7 Cush., 84.) There is no law against putting in one contract, and including in one assessment list, work upon several blocks.) *In re Ingraham*, 64 N. Y., 310.) The petitioner, having stood by, knowing that the work was being performed upon his land, and having made no objection thereto, is estopped from disputing the right of the city to enter upon the land and perform the work, and is precluded from disputing the validity of the assessment. (*People* v. *Utica*, 65 Barb., 1; *State* v. *Passaic*, 38 N. J. L., 171, 190.)

*Charles E. Miller*, for respondent. The construction of the drain was a trespass, for which no assessment could be laid. (*In re Cheseborough*, 78 N. Y., 232.)

Rapallo, J. The work for which the assessment complained of was laid, consisted mainly of filling in sunken land lying between and bounded by Ninety-second and One Hundred and ninth street, Third avenue and the East river, in the city of New York, comprising many blocks of land. The whole expense of this improvement, which was assessed upon property owners, was included in one assessment, and apportioned on the several lots within the area before mentioned. The total cost of the work was $307.948.83 which embraced the following items :

3,328 feet drain at $1.65 _____ $5,491 20
139,776 feet BM. foundation plank _____ 4,193 28

| | | |
|---|---:|---:|
| 431,619 cub. yards earth filling at 65 cents___ | $280,552 | 65 |
| Surveyor's fees___ | 14,512 | 00 |
| Inspector's time, 800 days___ | 3,200 | 00 |
| | $307,948 | 83 |

Of this amount $248,534.27 was assessed upon the property alleged to be benefited.

There was no ordinance or resolution of the common council authorizing this extensive improvement, but it was made by the commissioner of public works in pursuance of a requisition of the board of health, directing him to cause the plots of land within the bounds before mentioned to be drained by other means than by sewers, under and by virtue of the provisions of chapter 566 of the Laws of 1871.

These provisions are as follows :

Section 1.  " Whenever it shall appear to be necessary for the protection of the public health that any plot or parcel of land within the corporate limits of the city and county of New York needs to be drained by other means than by sewers, and it shall be so certified by the city sanitary inspector and said certificate is filed among the records of the board of health of the health department of said city, the said board shall direct the same to be done by and under the direction of the department of public works of said city and county."

Section 2.  " All parts and parcels of land lying below the level of the sewers adjacent thereto, upon which surface water remains stagnant, or through which water-courses have or at present do run, may be *so drained* by a properly constructed blind drain which shall be carried along such natural water-course until it can be made to enter any sewer at its proper level, or if such sewer cannot be reached it shall be carried to the adjacent river."

Section 3.  " All lands benefited by said *drain* directly or indirectly for a distance from said drain included between the adjacent streets and avenues thereto, shall be liable to assessment thereon *pro rata*, in proportion to the direct or

indirect benefit derived from the construction of said *drain*. The assessment to be made and collected as other assessments for the public benefit are provided for," and to become a lien, etc.

It is very apparent from the reading of this act, that the summary proceeding thereby authorized, was intended to apply to cases where surface water not capable of being carried off by the sewers, could be removed by the construction of drains. There is not a word in the act which purports to empower the commissioner of public works, on the simple requisition of the board of health, to make such an extensive and costly permanent improvement as is shown in the present case. The improvement actually made under color of their order was the redeeming, raising and filling in of upward of seventy acres of sunken land, at an expense of several hundred thousand dollars while the expense incurred for the construction of drains was only about $5,000. The only power conferred upon the board of health is to direct the *draining* of land by means other than sewers. The second section prescribes how the lands may be *so drained*, that is by a properly constructed blind drain; and the only authority to assess is in section third, that all lands benefited by *said drain* shall be liable to assessment, but the area of assessment is restricted to the land between said drain and the adjacent streets and avenues, and the assessment is to be *pro rata* in proportion to the benefit derived from the construction of said *drain*. The intent evidently was to provide an expeditious mode of removing surface water injurious to the public health where that end could be attained by the construction of drains in the manner described in the act. It may be that some filling might be necessary as incidental to the construction of such drains, but it cannot be pretended that the raising of the vast number of sunken lots involved in the improvement in question was incidental to the construction of the drains. The drains were a comparatively insignificant part of the work done, and on many of the blocks filled in and raised, no drains whatever were constructed. The work

was a permanent improvement, occupying three years in its construction, and not of the kind which the board of health was authorized to direct in cases of emergency.

The filling in of sunken lots is provided for by another statute, which has not been followed in the present case, and which provides a rule for assessing the expense, very different from that adopted by the commissioner of public works in this case. By the act of April 9, 1813 (2 R. L., 342), ample powers are given to the corporation of the city of New York to make the improvement which has been made under color of the order of the board of health. By section 267 of that act (2 R. L., 445), the Mayor, etc., in Common Council convened are empowered among other things to make ordinances for filling up, draining and regulating grounds that are sunken, damp, or unwholesome, or which they may deem proper to fill up, drain, raise, lower or regulate, and also for causing all such lots of ground adjoining to Hudson's river or to the East river or Sound as they may from time to time think proper, to be filled up with wholesome earth or other solid material, and for compelling the proprietors of such lands to make bulk-heads and raise and fill up the lots, etc. Section 270 provides that the corporation may in all cases when they deem it necessary for the more speedy execution of said ordinances, cause the work to be done at their own expense, on account of the persons upon whom the same may be assessed, and levy the same with interest and costs on the goods and chattels of the proprietors or occupants of the property upon or by reason of which such sum shall have been assessed, or recover it by action from the persons on whose account the expense shall have been incurred, and by section 271 the expenses thus paid by the corporation on account of others are made a lien upon their property.

Under this statute the proprietors are made to pay the expense of filling up and raising or redeeming their own property, and it is not, as in the present case, charged upon their neighbors. The appellant in the present case is made

to contribute *pro rata* to the total expense of filling, without reference to the question whether his own lot required filling or not, or what proportion of filling was done upon it or on his account. From the statement annexed to the assessment roll, which is printed in the appellant's points, and therein stated to have been put in evidence, it appears that on some of the nineteen blocks on which filling was done there were respectively 636 yards, 1400 yards, 3983 yards and 4914 yards of filling, while on other blocks the amounts run up to 35,284, 36,765, 39,295 and 41,739 yards respectively, and yet the total amount of filling on all the blocks, aggregating 431,619 cubic yards is included in one assessment and every lot is charged with its proportion. By this means, although if the land had been so situated as to be capable of being drained, the average cost per lot of all the drain constructed would be about five dollars, the assessment upon each lot of the petitioner is $325, and in the total assessment is included the cost of filling in seven blocks of land on which no drain whatever was built, and on which the petitioner's property was not situated. The drainage act of 1871 contains no authority for such an assessment even if the extraordinary proposition could be maintained that the filling in in question was merely an incident to the construction of the drain, for the drainage act limits the area of assessment for each drain constructed, to the blocks through which it runs, consequently the petitioner's lot could not be legally assessed under that act for the construction of drains on other blocks than that on which his lot was situated, or at all events than through which the same drain ran. There is no authority for mingling in one assessment the cost of drains running between different streets, for the express provision applicable to every drain constructed under that act is that the assessment shall be upon the lands benefited " to a distance from said drain included between the adjacent streets and avenues thereto."

I can find no law under which the assessment in question can be sustained. I concur in the opinions of Lawrence, J.

at Special Term, and of the General Term, that the filling in in question was not authorized by the act of 1871. There is nothing in that act which purports to transfer to the board of health the powers of the Common Council in that respect, or to change the principle of assessment for such work provided by the act of 1813. Much of the land filled in consisted of the salt marshes adjacent to the East river, for the redemption of which express provision is made in that act. But on any construction of the statute of 1871 the assessment was not laid in the manner therein prescribed.

The order should be affirmed.

All concur.

Order affirmed.