In the Matter of the Petition of THOMAS H. WALTER to Vacate an Assessment.

The power conferred upon the commissioners of Central park by the act of 1867 (§ 1, chap. 697, Laws of 1867) to change the grade of any of the streets within a district therein specified, in the city of New York, was not subject to, or limited by, the provision of the act of 1852 (§ 2, chap. 52, Laws of 1852), prohibiting the common council of said city from changing the grade of streets without the written consent of the owners of two-thirds, in lineal feet, of the adjoining lands.

Accordingly, *held*, that an assessment for a change in the grade of a street, made by said commissioners under said act of 1867, was not invalidated because of failure to obtain such consent.

(Submitted November 30, 1880 ; decided January 25, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made July 1, 1880, affirming an order of Special Term denying an application to vacate an assessment upon certain lots in the city of New York for regulating and grading Fifth avenue from Ninetieth to

One Hundred and Twentieth streets. (Reported below, 21 Hun, 533.)

The facts are set forth sufficiently in the opinion.

*G. S. Wilkes* for appellant.

*William C. Whitney* for respondent.

RAPALLO, J. The only ground upon which the assessment is assailed is, that it was imposed for the expenses of changing the grade of Fifth avenue from Ninetieth to One Hundred and Twentieth streets, which had been already graded and regulated at the expense of the owners of the adjoining lands, and that the written consent of two-thirds of the owners of the lands on the east side of said avenue, opposite to the part assessed, was not obtained as required by Laws of 1852, chapter 52.

The act referred to is entitled " An act to make permanent the grades of the streets and avenues of the city of New York," and it provides (§ 1) that such grades, as then fixed and established by the common council south of Sixty-third street, or which shall thereafter be fixed north of Sixty-second street, shall not be changed except as provided by the act.

Section 2 then directs that public notice be given by the street commissioner of any application or intention to make any such change of grade, before it shall be lawful for the common council to take any action in the matter, and that it shall not be lawful for the common council to change the grade of any street or avenue south of Sixty-third or north of Sixty-second street, except upon the written consent of the owners of at least two-thirds, in lineal feet, of the adjoining lands. This is the prohibition upon which the appellant relies.

Section 3 provides for the payment of damages to adjoining lands, and improvements thereon caused by changes of grade.

The change of grade for which the assessment now in question was laid was not made under the act of 1852, nor was it made by the common council or under its authority; but it was made by the commissioners of Central park, under the

authority conferred upon them by chapter 697 of the Laws of 1867.

The act of 1867 was passed for a different purpose from that declared in the act of 1852. While the purpose declared in the act of 1852 was to make the grades of the streets and avenues permanent, that declared in the title of the act of 1867 was to alter the plan of certain portions of the city ; and the power to make these alterations, instead of being lodged with the common council, was placed in the hands of the commissioners of Central park, which was a legislative commission entirely independent of the common council, and not subject to any of the restrictions imposed upon that body, except such as might by special provision be made applicable to the commissioners. By this act the commissioners were, among other things, vested with exclusive power to alter or amend the then present grades of any streets or avenues laid out or retained by them within a certain district, which included, among others, a space of three hundred and fifty feet in width surrounding the park. This space included Fifth avenue, from Fifty-ninth to One Hundred and Tenth street, and consequently that part of the avenue which lies in front of the petitioner's lots, they being on Fifth avenue, between One Hundred and Third and One Hundred and Fourth streets. The act of 1867 requires of the commissioners of Central park no notice of intention or application for a change of grade to be given by the street commissioner, nor does it require the consent of property owners, which is required as to changes of grade ordered by the common council, nor can these provisions, by any construction, be made applicable to changes made by the commissioners of Central park. The act of 1867, without requiring any preliminaries, empowers the commissioners to make two maps or plans, showing the streets, avenues, etc., laid out or retained by them ; their width, location, etc., and also two similar maps or plans, showing the grades that shall be amended or established by them for the streets, avenues, etc., laid . out or retained by them. These maps and plans, when filed as directed, are by section 3 made final and conclusive, as well upon the corporation as upon the property

owners and occupants within the prescribed district, and all persons whomsoever; and all streets, etc., and the grades thereof, not shown or retained on these maps and plans are abolished, and the property reverts to the adjoining owners. The changes of grade made by these commissioners had the same force as if made by the legislature itself.

As to the grades, as fixed or changed by the commissioners under this act, a subsequent change of grade is by section 5 prohibited, unless the owners of two-thirds of the land in front of which the changes are made consent. And the express enactment of this provision of the act of 1852, in respect to such subsequent changes, shows very clearly that it was not considered as in force in respect to the changes of grade first authorized to be made by the commissioners, nor intended so to be. The purposes of the two acts were entirely different. While the act of 1852 took from the common council the power of changing an established grade, without the consent of property owners, the act of 1867 gave full and exclusive power to the commissioners to make changes without requiring the concurrence either of the common council or the landowners. The object, undoubtedly, was to enable the commissioners to harmonize the grades of the streets, etc., with Central park.

The grades of the avenue in front of the petitioner's lots had been established by the common council in 1859, and his property had been assessed for the work. In November, 1867, the board of commissioners of Central park, acting under and by virtue of chapter 697 of the Laws of 1867, changed the grade in front of the petitioner's lots, and filed the required maps and plans. The work of making the avenue conform to the new grade was ordered by the common council in July, 1874, and the assessment therefor was confirmed in December, 1876, and is the assessment now in dispute.

The change of grade was thus legally made and the new grade legally established by the Central park commissioners. It was declared, however, by section 6 of the act, that they had no power to do any work which any of the departments

of the city government were authorized by law to do, but that the work should be done by the proper department, upon the requisition of the commissioners, and on the plan adopted by them. Before the work now in question was done, changes were made by statute, whereby the powers of the commissioners of Central park were transferred to the park department and the commissioner of public works; and no question is presented by the petition as to the manner in which the work in question was ordered and done. It must be assumed that these steps were properly taken; and if the provision of the act of 1852 has no application to the present case, as we think it clearly has not, the petition was properly denied. The only question which is raised by the petition is whether the change of grade was lawfully made in the absence of the consent of property owners. If it was, the right to do the work of conforming to the new grade necessarily followed, and there is no enactment imposing upon the city at large the expense of doing such work, or excepting it from the general provisions for defraying the expense of local improvements. On the contrary, section 9 of the act expressly declares that all acts then in force in relation to opening, grading and otherwise improving streets, and the assessment and collection of the expenses for the same, which are not inconsistent, etc., are applicable the same as if they were incorporated in the act.

It cannot be supposed, as suggested, that the intention of the legislature was that a change of grade might be made without the consent of property owners, but that to authorize an assessment for the expense of doing the work, such consent must be obtained.

The order should be affirmed.

All concur.

Order affirmed.