## In the Matter of the Petition of STEPHEN UPSON to Vacate an Assessment.

The omission to file a map in accordance with the provision of the act of 1870 (§ 2, chap. 626, Laws of 1870), requiring the department of public parks in the city of New York to cause to be made maps and plans of the streets laid out, altered, etc., is not a substantial or vital error rendering an assessment for a change of grade of an existing and established street invalid ; the filing of the map is not an indispensable prerequisite to the establishment of a new grade, but simply a matter of form, a mere irregularity which furnishes no ground for vacating or setting aside the assessment.

The title of the act of 1872 (Chap. 872, Laws of 1872), entitled " An act in relation to the Croton aqueduct and other public works in the city of New York," sufficiently states the subject of the act, and so it is not obnoxious to the provision of the State Constitution (art. 3, § 16), requiring the subject of a local or private bill to be expressed in its title.

In 1859 a contract was awarded to one McG. to regulate and grade a certain portion of Fifth avenue. It provided that, in case the grade should be changed during the progress of the work, the contractor was to conform to the altered grade at the contract-prices, so far as applicable ; this contract was not completed until in 1875, several months previous to which time a new contract was made with E. to regulate and grade, in accordance with a new grade, under an ordinance of the common council, passed in 1874. If the work had been done under the contract of McG. the expense would have been much less. *Held*, that, as it did not appear that there was any such difference or change made as rendered the first contract inapplicable, or that it could not have been enforced, the parties assessed were entitled to the benefit of the reduced prices ; that the error,

however, furnished no ground for vacating the assessment entirely, but simply for a reduction.

· *In re Upson* (*Mem.*, 24 Hun, 650), reversed.

(Argued October 18, 1881; decided January 17, 1882.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made April 28, 1881, which affirmed an order of Special Term denying an application to vacate an assessment on certain lots in the city of New York, owned by the petitioner, for regulating, grading, etc., Fifth avenue, from Ninetieth to One Hundred and Twentieth streets. (Mem. of decision below, 24 Hun, 650.)

The facts are sufficiently stated in the opinion.

*Charles E. Miller* for appellant.   Chapter 872 of the Laws of 1872 does not express its subject in its title, and is unconstitutional.   (Const., art. 8, § 16.)  The powers and functions of the department of public parks are not in any manner described by the words " public works " ·as used in the title of said act. (*Town of Fishkill* v. *Plankroad Co.*, 22 Barb. 634; *People* v. *Hill*, 35 N. Y. 449; *Baldwin* v. *Mayor*, 2 Keyes, 387, 392; *People* v. *O'Brien*, 38 N. Y. 193 ; *Smith* v. *Mayor*, 7 Robt. 190 ; *Pullman* v. *Mayor*, 54 Barb. 169 ; *Gaskin* v. *Meek*, 42 N. Y. 186 ; *People* v. *Comm'rs of Highways of Town of Palantine*, 53 Barb. 70; *People* v. *Allen*, 3 Hand, 404, 417; *People, ex rel. Lee*, v. *B'd of Sup'v'rs of Chautauqua Co.*, 4 id. 10 ; *People, ex rel. Pratt*, v. *Com. Council of Brooklyn*, 13 Abb. [N. S.] 121 ; *People* v. *Briggs*, 50 N. Y. 553; *Huber* v. ·*People*, 49 id. 132 ; *In re Sackett, etc., Sts.*, 74 id. 95.)

*J. A. Beall* for respondent.   The grade at which the street was worked was lawfully established.  (Chap. 88, Laws of 1787, § 4; chap. 129, Laws of 1801, § 11; chap. 86, 2 R. L. 1813, § 175 ; chap. 52, Laws of 1852, §§ 1, 2; chap. 626, Laws of 1870; chap. 872, Laws of 1872, § 7.)  The subject of ˙the act of 1872 (Chap. 872) is sufficiently expressed in its title.  (*In re Mayor*, 50 N. Y. 504.)  Where the title of a local or private act expresses a general purpose or object, all

matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act and are germane to the title. (*City of Rochester* v. *Briggs,* 50 N. Y. 553; *In re Van Antwerp,* 56 id. 261–7; *Nuendorff* v. *Duryea,* 69 id. 557; *In re Metropolitan Gas-light Co.* [not yet reported]; *Gloversville* v. *Howell,* 70 N. Y. 287; *Harris* v. *The People,* 59 id. 599; *People* v. *Banks,* 67 id. 568.) The corporation had the power to assent to the variation or modification of the contract, and its assent to such variance ·may be implied. (Dillon on Corporations, § 451; *Messinger* v. *Buffalo,* 21 N. Y. 196.) The city is entitled to the presumption that the act of the authorities was valid. (*In re Bassford,* 50 N. Y. 509.) If the variation or modification of the McGrane contract was unlawful, it does not call for or authorize the vacation of the assessment, but presents a proper case for the reduction thereof in proportion to the unlawful increase. (*In re St. Joseph's Asylum,* 69 N. Y. 383; *In re Hebrew Orphan Asylum,* 70 id. 476; *In re Auchmuty,* 18 Hun, 324; *In re Merriam,* Ct. of Appeals, MSS.) The objection that the map filed by the commissioner of public works, and which made the second change of grade, did not include the entire district of the city covered by the act of 1870, is an objection merely to the form in which the change was made, and is for that reason untenable. (Laws of 1874, chap. 313; *In re Marsh* [not yet reported]; *In re Pinckney* [not yet reported]; *In re Cruger,* 84 N. Y. 619; *In re Mayor,* 50 id. 504; Laws of 1872, chap. 580.)

MILLER, J. The petitioner seeks to avoid the assessment which is the subject of consideration upon two grounds:

*First.* That the work was illegally done, the avenue having been previously regulated and graded to the grade established in 1853, and such grade never having been legally changed.

*Second.* That when the contract for this work was entered into there was an outstanding contract, by the terms of which the contractor was bound to do his work at much less price

than those actually paid, making a difference in cost of over $48,000.

The expenses for which the assessment was made were for changing the grade of Fifth avenue, between Ninetieth and One Hundred and Twentieth streets. The work was done by virtue of an ordinance of the common council passed July 25, 1874, under a contract with one Everard. The avenue had previously been regulated and graded to the grade established by the common council in the month of December, 1853, in pursuance of an ordinance for regulating and grading said avenue from Eighty-sixth street to Mount Morris square, and the contract was awarded to one John McGrane in 1859. Under chapter 52, Laws of 1852, provision is made by section 1, that the grade now fixed and established by the common council, south of Sixty-third street, and which shall hereafter be fixed and established, north of Sixty-second street, shall not be changed or altered except as hereinafter provided. By section 2, whenever an application shall be made to the common council to change or alter the grade of any street, and the common council shall deem it expedient to do so, notice is to be given as provided before it shall be lawful for the common council to act upon the application, and it is declared that it shall not be lawful for the common council to alter or change the grade of any street within the limits provided by section 1 without the written consent of two-thirds of the owners in lineal feet fronting on each side of the street or avenue, etc. Further provision is made for the assessment of loss or damage and for the payment of the same. No such consent or notice was ever given as required by the act of 1852. The grade, the expense of which is the subject of assessment, was originally established by the commissioners of the Central Park by virtue of chapter 697 of the Laws of 1867 and by the commissioners of public works claiming to possess power to establish grades by virtue of chapter 626 of the Laws of 1870 and chapter 872 of the Laws of 1872.

The appellant's counsel claims that no such power existed under the act of 1870 or the act of 1872 (*supra*), and that under

the act of 1870 this could not be done until the commissioners had made and filed a map showing streets laid out and retained by them, and that this was preliminary to the establishment of such grade. It, therefore, becomes important to inquire and determine from whence the authority is derived and the nature of the provisions of the various acts which have been cited, relating to or bearing upon the subject. The act of 1867 (*supra*, § 1), authorized the board of commissioners of the Central park to lay out and establish streets, etc., to designate and direct what part or parts of any streets * * * now laid out shall be abandoned and closed, and also to widen any streets "now laid out; also to alter and amend the present grade of any street, * * * that may be retained by them, and to establish new grades for all other streets, * * * that may be laid out and established or retained by them," within a certain territory which was specified. Section 2 provides among other things that the "said commissioners shall in all cases of laying out streets, etc., and in the establishment of grades thereof and of pier and bulk-head lines which they are authorized and directed by law to lay out or establish, cause to be made two similar maps or plans showing the streets, * * * which they shall lay out or retain as aforesaid, showing the width, extent and location of the same, and also two similar maps or plans, showing the grades that shall be amended or established by them for the streets," etc., so laid out or retained by them, and said maps or plans when so made shall be certified by one of the officers of the board of commissioners, etc., "one of said maps showing the width," etc., "and one of said maps showing the grades so amended or established shall be filed and remain of record in the office of the street commissioner of said city, and the others shall remain of record in the office of said commissioners of the Central park."

The avenue upon which the lot assessed was located, from Ninetieth up to One Hundred and Eleventh street, is included within the limits named in the act of 1867, and covered by it.

By chapter 626, Sessions Laws of 1870 (*supra*, § 1), the department of public parks were declared to have and possess

*exclusive power* to lay out and establish a street or avenue called the "Eastern boulevard," and other streets or avenues to connect with the same, "and also to alter, amend and establish the grades of such new streets; and *alter or amend* the present grade of any street, avenue, or road that may be *retained by them*" within the limits of certain territory which was specified. The second section makes the same provision as that contained in the act of 1867, as to the making and filing of maps, and plans showing the streets established and retained. By the act of 1872 (*supra*, § 7), it is declared as follows: "The department of public works shall have and possess all the powers and functions heretofore and now possessed by the department of public parks in relation to the boulevard (road or public drive), streets, avenues, and roads above Fifty-ninth street, not embraced within the limits of any park or public place, and all provisions of law conferring powers and devolving duties upon the department of public parks in relation thereto are hereby transferred to and conferred upon the said department of public works." The grade which is now assailed as invalid was duly established by the commissioners, and such grade and the assessment for conforming to the same have been held by this court to be valid. (*In re Walter*, 83 N. Y. 538.)

Upon the hearing, evidence was introduced from records of the commissioners of public works of a map entitled "map and profile," showing the grades of the streets and avenues within the district therein named, including Fifth avenue between One Hundred and Eighth and One Hundred and Nineteenth streets, as changed and established under the act of 1870, and act of 1872; with red lines and figures showing grades as changed and established, and black lines and figures showing old grades. Appended to the map was a certificate of the commissioner, stating that he had changed and established the grades of certain streets, which were named " as shown on this map and profile, and that this map and profile shows the grades of said streets and avenues as so changed and established." A certificate of the comptroller and treasurer of the park, at-

tached to a map and profile, was also offered in evidence; it states that the map was one of two similar maps or profiles made by the commissioners of Central park by virtue of the powers conferred by the act of 1867, and that they show the grade of Fifth avenue between Ninety-seventh and One Hundred and Ninth streets. The proof also showed that no map or plan had been filed, or was made under authority of the act of 1870, and that the grade to which the street was regulated under the contract with which the present assessment is concerned is coincident with the grade laid down upon the two maps introduced in evidence upon the hearing.

Without considering the question whether there was a substantial compliance with the act of 1870, and after a careful examination of the different statutes which have been cited, we are brought to the conclusion that the omission to file a map in accordance with the provisions of the second section of the act of 1870 was not a substantial or vital error which rendered the assessment invalid. The statute is not prohibitory, and does not provide that no work shall be done before a map is filed, and we think that the filing of the map was not an indispensable preliminary requisite to the establishment of a grade. The streets are established according to law, and cannot be changed or abolished by a mere failure to file a map showing that they are retained. A map showing the retention of an existing and established street is a matter of form and not of substance. It is not a condition precedent which it is absolutely essential should be performed before the work can lawfully be done, or an assessment made to pay for the same. At most, the neglect to file the map is an omission of the officers to perform a duty, and comply with or to carry out the details of a law, and was a mere irregularity which, it is provided, expressly furnishes no ground for vacating or setting aside an assessment. (See chap. 313, S. L. of 1874.)

The failure to file the map required not being jurisdictional, we think that the objection urged and considered furnishes no sufficient ground for vacating the assessment.

We also think that the title of the act of 1872 sufficiently states the subject and is not within the inhibition of section 16, article 3 of the Constitution. The opinion of the General Term by DANIELS, J., fully covers this point, and an extended discussion is not demanded. (See, also, *In re One Hundred and Thirty-eighth Street*, MSS. Op.*)

Although the assessment was valid, we are unable to see any reason why the work was not done in accordance with the contract which had previously been made with one John McGrane in 1859, which provided that, in case the grade should be changed on the Fifth avenue or the adjoining streets during the progress of the work, the contractor was to conform to the altered grade at the prices in the contract so far as applicable. This contract was not completed until 1875, and the contract under which the assessment was laid was made several months previously. The expense was much less under the McGrane contract, and no reason is apparent why the parties assessed should not have the benefit arising from such reduced prices.

Why this contract could not have been enforced is not shown, and there is no such difference manifest or any such change of grade as authorizes the conclusion that it had no application. This error, however, furnishes no ground for vacating the assessment entirely, and as the amount, if any, which should be deducted can be determined, the orders should be reversed and a new hearing should be ordered at Special Term for that purpose, with costs to abide the event.

All concur.

Ordered accordingly.

---

* 86 N. Y. 437.