*In re* DELAWARE & H. CANAL CO.

*In re* SOUTH PEARL ST.

(*Albany County Court.* December, 1889.)

1. MUNICIPAL CORPORATIONS—ASSESSMENTS—PETITION.
   Under Laws N. Y. 1871, c. 536, § 4, adding section 19 to Laws 1870, c. 77, tit. 6, which provides that no ordinance shall be passed for paving a street in the city of Albany unless a petition for the same shall have been presented to the common council, signed by persons owning not less than one-third of the number of feet fronting both sides of the street, the presentation of a proper petition is jurisdictional, and an assessment for paving a street ordered on a petition not signed by the requisite number of owners is invalid.

2. SAME—PAVING INTERSECTING STREETS.
   The width of streets intersecting, but not crossing, the street improved, is to be included in ascertaining the length of the improvement, as Laws N. Y. 1872, c. 302, provides that the expense of paving, etc., in front of the intersection, is to be apportioned and assessed, with all the other costs of the improvement, on all the property intended to be benefited.

3. SAME—AWARDING CONTRACT—FRAUD.
   In proceedings to vacate a street assessment, evidence that the board of contract and apportionment awarded the contract for improvement to the highest bidder, whose bid was $20,000 higher than that of the lowest bidder, and that subsequently, without direction by the board, the contract was made with the highest bidder and a stranger, instead of with the highest bidder alone, is sufficient to establish the existence of a conspiracy to defraud the city and its tax-payers, in the absence of any explanation by the board or the contractors.

4. SAME—ORDINANCES.
   The city council, at the same meeting at which it passed an ordinance establishing the grade of the street in question, and before the ordinance had been signed by the mayor, passed another, providing that the street should be paved. *Held,* that under Albany City Ordinances 1876, p. 428, § 28, which provides that "no law for the paving of any street shall be passed unless the level of such street shall have been previously established," the ordinance for paving was void.

5. SAME—NOTICE OF PENDENCY.
   Under Laws N. Y. 1871, c. 536, p. 1134, which requires a publication of notice of the pendency of an ordinance relating to street improvements, and inviting "persons interested therein" to present objections, a notice which states that "any person" having objections to the passage of the ordinance is hereby requested to present them, without stating the time when this is to be done, is insufficient.

6. SAME—REVIEW OF APPORTIONMENT.
   The city charter of Albany provides that when the apportionment for an improvement shall have been perfected the board of apportionment shall cause a notice to be published in the official papers of the city for 15 days, during which time the apportionment shall be open for examination by any person interested; and on the application in writing of any person considering himself aggrieved the board may review and correct such apportionment. *Held,* that the statute contemplates the giving of 15 days in which interested persons may examine the assessment, and during this time, or at any time before action has been taken by the board, objections may be made in writing to the assessment; and therefore a restriction limiting the time in which objections can be made, though more than 15 days from the first publication, renders the notice nugatory.

7. SAME—NOTICE OF IMPROVEMENT—OMISSION OF ITEM.
   The fact that no notice was given of one of the items, except in the invalid notice to present objections to the apportionment, vitiates the entire assessment.

8. SAME—VACATING ASSESSMENTS—RETROACTIVE STATUTE.
   The Albany City Charter, tit. 11, (Laws N. Y. 1883, c. 298,) which confers jurisdiction on the county judge to vacate street assessments in certain cases, is not merely prospective, but applies to assessments made before its passage.

9. SAME—VALIDATING ASSESSMENTS.
   The Albany City Charter, tit. 11, § 1, (Laws N. Y. 1883, p. 396,) which provides that "all assessments heretofore levied in the city of Albany, proceedings to vacate, review, or set aside which were not pending January 15, 1883, are hereby validated and confirmed," does not embrace void assessments.

Petition by the Delaware & Hudson Canal Company and 38 others, under Laws N. Y. 1883, c. 298, tit. 11, as amended by Laws N. Y. 1887, c. 242, to vacate an assessment levied by the city of Albany for improving South Pearl

street, a public street in that city. Laws N. Y. 1871, c. 536, § 4, adds § 19 to tit. 6, c. 77, Laws 1870.

*Edward J. Meegan,* for petitioners.    *D. Cady Herrick,* Corp. Counsel, for the City.

NOTT, J.    By the act of 1870, (chapter 139, Laws 1870,) the southern boundary of the city of Albany was extended about half a mile. It included a portion of the Kenwood road, a public highway in the town of Bethlehem, which was a continuation of South Pearl street, in this city. The road within the city was named by the city authorities "South Pearl Street." This portion of the street was unpaved. By chapter 290 of the Laws of 1880 it was provided (section 1) that "whenever the city of Albany shall have, pursuant to the laws of the state of New York and the ordinances of said city having reference thereto, provided for the draining, forming, and grading, paving and flagging, South Pearl street, in said city, from Gansevoort street to a point 340 feet south of McCarty avenue, and the work shall be completed and apportioned, and said apportionment shall be confirmed," the city might issue bonds, and with the avails thereof pay for the work, and assessments laid would be due from the owners in five years from the date of confirmation of assessment. The provisions of the charter and ordinances of the city of Albany relating to street work, and referred to in said chapter 290, were as follows: Provision for a petition, notice, etc., antecedent to the ordering of work to be done, was made by chapter 536, Laws 1871: "Sec. 19. No law or ordinance shall be passed by the common council for excavating, filling, forming, paving, repaving, curbing, or flagging any street, avenue, court, or alley, or any part thereof, unless a petition shall have been presented to the common council for the same, signed by one or more persons owning not less than one-third of the number of feet fronting both sides of the street, avenue, court, or alley to be improved, as shall appear by the annual tax-rolls on file in the office of the receiver of taxes, or by the certificate of the city surveyor and engineer." A notice of such proposed law or ordinance shall be published by the clerk of the common council, for five days, in the official newspapers before its final passage, stating the kind of work and the limits of such improvements, as near as may be embraced in said law or ordinance, and inviting parties interested therein to present their objections in writing, if any, thereto. Page 1134. The city ordinances in force at the time of the making of the improvement in question provided: "Sec. 28. No law for the paving of any street shall be passed unless the level of the said street shall have been previously established or shall be provided for in said law." City Ordinances, (Ed. 1886,) p. 428.

At a meeting of the common council of the city held August 16, 1880, a petition was presented which read as follows:

"*To the Honorable the Common Council of the City of Albany*—GENTLEMEN: The undersigned would most respectfully represent to your honorable body that they are respectively the owners in fee of the houses and lots and vacant lots fronting on South Pearl street, between Gansevoort street and a line drawn across South Pearl street three hundred and forty feet south of McCarty avenue, to the extent of the number of feet set opposite their names, respectively, and that the said number of feet respectively represents the width of said lot or lots fronting the improvement to be made and owned by the undersigned, respectively; and that we, the said owners, would most respectfully ask your honorable body to pass a law or ordinance for establishing a grade, and for laying a drain, and for excavating, filling, forming, grading, curbing, flagging, and paving with dimension granite blocks, that portion of South Pearl street from the line of Gansevoort street to a line drawn across said street at a point three hundred and forty feet south of the south line of McCarty avenue; and that the said work be done and improvements made in

accordance with the charter of the city of Albany, and the city ordinances re-
lating to said city, and in accordance with an act passed by the legislature of
the state of New York, entitled 'An act to permit and authorize the city of
Albany to issue the bonds of the said city for the payment of the expense of
draining, grading, forming, paving, and flagging a portion of South Pearl
street, in the city of Albany, and to extend the time of payment of the assess-
ment therefor;' and the undersigned do hereby severally and collectively ac-
cept the terms and provisions of said act, and each and every part thereof,
and do hereby, for ourselves, our and each of our heirs, executors, and as-
signs, in consideration of the premises, agree to and unto the city of Albany
that the amount assessed by the board of contract and apportionment for said
improvement shall be a valid and subsisting lien upon and against our several
premises and lands, respectively; and, as in duty bound, your petitioners will
ever pray.                              [Signatures and acknowledgments.]"
    Also the following certificate:
                    "CITY SURVEYOR AND ENGINEER'S OFFICE.
    "I certify that the owners of more than one-third of the number of feet
fronting South Pearl street, on both sides, between Gansevoort street and a
line 340 feet of the south line of McCarty avenue, have signed the above pe-
tition.              ·      R. H. BINGHAM, City Surveyor and Engineer."
    This petition purports to be signed by 32 owners, claiming to own 2,220½
feet.   The length of the improvement on both sides was 5,036 feet 11½ inches.
Of the persons who have signed, or are said to have signed, the petition, the
only title represented by the following is that set opposite their names:
    "Rosina Knozier, 30 feet, owns one-half in common.
    "Frederick Schaffer, 25 feet, tenant by entirety only, co-tenant not joining.
    "Mina Schindler, 125 feet, owns one-third in common.
    "Thomas McCarty, 177 feet, lost his title by bankruptcy proceedings and
assessment sale to Olcott and King.
    "Michael Gardner, 30 feet, wife owns property.
    "Frank and Peter Fougle, 27½ feet, own but 25 feet, but sign for 27½
feet.
    "Catharine Sager, 30 feet, dowress with heirs living.
    "Stern and Fulgraff, 105 feet, Mrs. Fulgraff a dowress only, Mrs. Stern a
life-tenant in part of the premises."
    William Moore appears upon the petition as signing for a 100 feet.   His
name was forged.   The total number of feet represented by the defective title
and forged name was 624 feet and 6 inches.
    The corporation counsel introduced the assessment roll of the city to show
the ownership of some of the foregoing parties, and then the petitioners in-
troduced the same as to all the owners, and the variations appear as follows:

| "Name on Petition. | Feet. | How Assessed. |
|---|---|---|
| Catharine Sager    -      -      - | 30 | B. Sager's heirs. |
| Frederick Schaffer    -      - | 25 | Maria B. Schaffer. |
| Rosina Knozier    -      -      - | 30.4 | Wm. Seagrist and wife. |
| Harriet M. Elmendorf      - | 319 | S. Van Rensselaer's heirs. |
| Mina Schindler    -      -      - | 125 | Name does not appear at all. |
| Thomas McCarty      -      - | 17 | More than he has. |
| William Moore    -      -      - | 40 | Only 60 feet on assessment roll. |
| Peter and Frank Fougle      - | 1½ | Only 26, sign for 27½. |
| Margaret Van Rensselaer      - | 273 | Name not on roll. |
| Total    -      -      - | 860 ft. 10 inches." | |

    The number of feet, one-third of both sides, was 1,678 feet 11½ inches.   On
the basis of actual title, the petition is short of one-third, 82 feet 10½ inches.
On the basis of the assessment the petition is short, 318 feet 3½ inches.   There
is no cross-street on the whole line of the improvement.   Island Creek street,
50 feet wide; Third avenue, 39 feet 8 inches wide; Second avenue, 46 feet

wide; First avenue, 81 feet 1½ inches wide; McCarty avenue, 61 feet wide,— are intersections, *i. e.*, streets running out from one side of and not crossing the street improved.

There appeared in the city newspapers of August 18, 1880, and four succeeding days, a notice of which the following is a copy:

"CORPORATION NOTICE—OFFICE OF THE CLERK OF THE COMMON COUNCIL, CITY OF ALBANY.

"The following laws on file in this office are pending before the common council:

"Law authorizing the re-excavating, refilling, reforming, recurbing, reflagging, and repaving with granite block the carriage-way of First street from its intersection with the west line of Ten Broeck street to the west line of Hawk street.

"Law authorizing the excavating, filling, forming, curbing, flagging, and paving with granite blocks South Pearl street from Gansevoort street to a point three hundred and forty feet south of McCarty avenue.

"Any person having objections to the passage of said laws is hereby requested to present the same in writing before the final passage thereof.

"MARTIN DELEHANTY, Clerk of Common Council."

No level or grade was established for that portion of South Pearl street until at a meeting of the common council held August 30, 1880, a resolution was adopted fixing and establishing the level or grade thereof, and which resolution was approved by the mayor the next day. At the same meeting a law was passed entitled "A law to authorize the excavating, filling, forming, curbing, flagging, and paving with dimension granite blocks South Pearl street from Gansevoort street to a point 340 feet south of McCarty avenue; also to lay sewer-pipe drain in South Pearl street from Gansevoort street to a point twenty feet north of Second avenue, and brick and cement sewer from the sewer across South Pearl at Schindler's to Prentice's line;" which law was approved by the mayor the next day. Under the city charter, the duty of executing this law and of awarding the contract to do the work devolved upon the board of contract and apportionment. At a meeting of that board held October 16, 1880, its clerk was directed to advertise for proposals to do the work. On the 13th of November, 1880, a number of proposals were received, and under the rules of the board the lowest bidder was entitled to the contract. The board refused, by a vote of six to one, to award the contract to the lowest bidder, but directed its clerk to readvertise for proposals to do the work, and at the same meeting rescinded the rule requiring contracts to be let to the lowest bidder. Under the last advertisement nine bids were received at a meeting December 11, 1880. The lowest bid was by J. McDermott, and Street Commissioner Keeler moved that the contract be awarded to him. The motion was not seconded, and Alderman McCann moved that the contract be awarded to James N. Brady, which was adopted by the following vote, affirmative: The mayor, Aldermen Carlisle, McCann, and Messrs. Bingham and Hill; the negative vote being Mr. Keeler. The mayor announced the award of the contract to James N. Brady. Mr. Brady was the highest bidder, being about $20,000 higher than his competitors. The course of the board of contract and apportionment in this matter was most reprehensible; and while it clearly appears from the certified copy of the record, and also by the positive testimony of Street Commissioner Keeler, that the contract was awarded to James N. Brady, yet it appears that, without the direction of the board, the contract was made with James N. Brady and Thomas McCarty, instead of with Brady alone; and it seems as if a proposal must have been made and filed to fit the contract, and that, in the excitement of the conspiracy, it was forgotten to change the record, so that it would conform to the alleged award to Brady and McCarty.

After the work was completed, an apportionment was prepared, the items of which were as follows:

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| "To 3,093 93-100 cubic yards excavation, at 30c., | | | - | | | - | | $ | | 928 | 18 |
| To 22,202 86-100 cubic yards filling, at 39c., | | | - | | | - | | | | 8,659 | 12 |
| To 9,740 56-100 sq. yards granite pavement, at $2.68, | | | | | | | | | | 26,104 | 70 |
| To 4,542 feet 10¾ in. sidewalk, at $3, | | | - | | | - | | | | 13,628 | 68 |
| To 1,429 lineal feet brick & cement sewer, at $5, | | | - | | | - | | | | 7,145 | 00 |
| To 146 lineal feet 18 inch pipe, at $1.80, | | | | | | - | | | | 262 | 80 |
| " 317 " " 15 " " " $1.75, | | | - | | | - | | | | 554 | 75 |
| " 1,020 " " 12 " " " $1.50, | | | - | | | - | | | | 1,530 | 00 |
| " 752 " " 8 " " " .90, | | | - | | | - | | | ・ | 676 | 80 |
| " 32 " " old curb reset " .01, | | | - | | | - | | | | | 32 |
| " 5 man-holes, each at $115, | | | - | | | - | | | - | 575 | 00 |
| " 10 receiving basins, at $150, | | | ・ | | | - | | | | 1,500 | 00 |
| " Printing and advertising, | | | - | | | - | | -, | ・ | 129 | 50 |

$61,694 85"

A notice for objections thereto was published in the city papers (all papers publishing in the morning) for only 15 times, commencing September 24, 1881, and ending October 11, 1881, as follows:

"APPORTIONMENT NOTICE—OFFICE OF THE BOARD OF CONTRACT AND APPORTIONMENT, STREET DEPARTMENT, CITY HALL.

"ALBANY, Sept. 24, 1881.

"The following apportionment has been perfected and is now in said office, open for inspection and examination by any person or persons interested. Any person or persons desiring such apportionment changed, modified, or corrected will make application in writing at said office on or before the 11th day of October, 1881, stating the changes, modifications, and corrections desired, and the reasons therefor, viz.: An apportionment of the expense for paving, grading, draining, etc., South Pearl street, from Gansevoort street to a point 340 feet south of McCarty avenue.

"NOTE. The assessment for the improvement of South Pearl street is levied upon all property on both sides of said street between the points named.

"By order of the board of contract and apportionment.

"THOMAS J. LANAHAN, Clerk."

This notice was published pursuant to the provisions of the charter of the city, claimed by the city to be then in force, which are contained in chapter 302 of the Laws of 1872, (1 Sess. Laws, 769.) The common council confirmed the apportionment, October 18, 1881. The petitioner in this case, and also 38 other petitioners, instituted proceedings under section 2 of title 11 of chapter 298 of the Laws of 1883 to vacate this assessment.

The presentation of a proper petition, signed by the required number of owners, was required by the city charter, and a failure in this respect was jurisdictional and fatal to an assessment, (*Jex* v. *Mayor, etc.*, 103 N. Y. 536, 9 N. E. Rep. 39;) and there is no substantial difference between the absence of a petition and a petition lacking essential elements, (2 Desty, Tax'n, 1298.) Deducting from the petition the number of feet represented by William Moore, whose name was proven to be a forgery, and the signature of but one of several joint owners, (*Mulligan* v. *Smith*, 59 Cal. 206,) and of dowresses, (*Mulligan* v. *Smith*, 59 Cal. 206,) and that of Michael Gardner and Thomas McCarty, who were not owners, the petition is insufficiently signed. Nor is the petition helped any by the assessment rolls. Tested by them, the petition is insufficiently signed.

The corporation counsel insisted on the argument that in ascertaining the length of an improvement intersections are to be deducted. This position is clearly untenable. The intersections, the same as any other property along the street, "front" upon the improvement, within the meaning of the charter existing at the time of doing the work in question. Section 19, tit. 6, c. 77, Laws 1870, as amended by c. 536, Laws 1871, p. 1134. The expense of paving, etc., in front of the intersections, is apportioned and assessed, with all

the other cost of the improvement, upon all the property intended to be benefited. Amendment to charter, chapter 302, Laws 1872, (1 Sess. Laws, 769.) The supreme court of Iowa has passed upon this question. DAY, J., says: "This meaning includes the idea that the intersection at the crossing of the streets includes the part of the street which the lot fronts and lies along." *Wolf* v. *City of Keokuk*, 48 Iowa, 129–132. In New Jersey it was held that intersecting streets cannot be assessed for the expense of street pavements; assessments therefor must be confined to the line of the street improved. *State* v. *Elizabeth*, 30 N. J. Law; 365.

The petitioners charge in their petition conspiracy and fraud in executing the contract with Brady and McCarty, and I must hold that the evidence in the case clearly establishes the existence of a conspiracy to defraud the city and its tax-payers. Mr. W. H. Keeler, who was street commissioner at the time, positively swears that the contract was awarded by the board of contract and apportionment to James N. Brady. The certified copy of the proceedings of that board made by its clerk also shows that fact, and the original record contains McCarty's name in the margin, but when this marginal entry was made does not appear. How did McCarty become a party to this transaction? It does not appear. It must have been a piece of jugglery, fully in keeping with the action of the board in awarding the contract to the highest bidder. The city and the contractors, or their sureties, should have explained, if they could, this evidence. Failing to do so is confirmation of the charge of fraud. The facts developed in these proceedings establish a case of fraud, within the authorities. *In re Raymond*, 21 Hun, 229; *In re Righter*, 92 N. Y. 111.

Other questions have been raised worthy of consideration. The petitioners claim that, as no grade or level was established before the passage of the law for the improvement, it is void. The grade or level of the street in question was adopted by the common council, August 30, 1880, (Minutes Common Council 1880, p. 496,) Alderman Donohue dissenting. It was at the same meeting at which the law was passed. Id. 498. The petition had been presented to the common council, and the law ordered noticed, August 16, 1880. Id. 475 *et seq.* The grade or level had not been established when the common council assumed to pass the ordinance to pave South Pearl street, because the resolution was not sent to the mayor until the day succeeding the meeting of that body, and it could not be established until the mayor had approved thereof, or the common council had passed it over his veto, if he disapproved of it. The petition for the improvement asked that it be done pursuant to chapter 290 of the Laws of 1880, and the ordinances of the city, and also that a grade be established. Under the city charter (chapter 173, Laws 1876) no law, ordinance, or resolution of the common council takes effect until presented to the mayor by the clerk of that body. Laws 1876, p. 132, § 1. The special legislative enactment of 1880, under which this improvement was carried forward, refers expressly to the "ordinance of said city." Chapter 290, Laws 1880, § 1. And the city ordinance provided: "No law for the paving of any street shall be passed unless the level of such street shall have been previously established, or shall be provided for in said law." City Ordinances 1876, p. 428, § 28. And by-laws and city ordinances enacted pursuant to statute have the same force and effect as a statute duly passed by the legislature of the state. *Church* v. *Mayor, etc.*, 5 Cow. 538; *People* v. *Police Board*, 6 Abb. Pr. 162. It seems quite clear that the establishment of a level or grade was a condition precedent to the passage of the law for the improvement, and it was irregular for the common council to act until the grade had been duly established.

I am inclined to the opinion that the notice published by the clerk of the common council, prior to the passage of the law for the improvement, was insufficient, and not a compliance with the statute. It does not, in words or substance, follow the requirements of the statute inviting "persons interested

therein" to present their objections, nor does it state when the objections were required to be presented.   I observe other and more serious objections to this notice which render it nugatory.

The petitioners also claim that the provision of the city charter which enacts, "And, when thus far perfected, the said board shall cause a notice of the same to be published in the official newspapers of the city of Albany for fifteen days, during which time the said apportionment and assessment shall be open for inspection and examination by any person or persons interested, and, on the application in writing of any person considering himself aggrieved, said board of contract and apportionment may review and correct such apportionment," gives full 15 days in which to make examination to find if there are any objections to be made; and that the other section conferred no authority upon the board or its clerk to limit the time to "on or before the 11th day of October, 1881," for the filing of remonstrances.   The statute contemplates the giving of 15 days in which interested parties may examine the assessment; and during this period, or at any time afterwards, and before action has been taken by the board, objections may be made in writing to the assessment.   And if, during those 15 days, a party conceives that he is aggrieved, he may apply in writing, and the board may then review and correct the assessment, if it deems the grievance sufficient.   I am inclined to the opinion that this restriction may have operated to the disadvantage of persons interested, and renders nugatory the notice.   *State* v. *Jersey City*, 25 N. J. Law, 309.

One-fifth of the total cost of the improvement, that is, $12,242, is for laying sewers, etc.   As to this item, the first notice given to those to be assessed was the notice last discussed.   The notice given by the clerk of the common council as to the pendency before the common council of the law for the improvements made no reference to the sewers, etc.   If, therefore, I am right in my conclusion that the notice to present objections to apportionment is invalid, this portion of the assessment must fail, as the rule is elementary that no one can be bound until he has had the opportunity to be heard, *i. e.*, had his day in court, (*Stuart* v. *Palmer*, 74 N. Y. 183; *Remsen* v. *Wheeler*, 105 N. Y. 573, 12 N. E. Rep. 564; 1 Blackw. Tax-Titles, 5th Ed., § 397; *People* v. *Gray*, 2 N. Y. Supp. 251;) and the law is well established that the effect of inserting an illegal item in an assessment is to vitate the assessment *in toto*, (*In re Houghton*, 20 Hun, 395; *In re Van Buren*, 17 Hun, 527, 79 N. Y. 384; *State* v. *Plainfield*, 38 N. J. Law, 93.)   Whether I have the power to reduce the assessment I shall not decide.   It is involved in doubt, as the power to reduce was not given until several years passed after the assessment had been levied and the rights of the parties had become vested.   It follows, from the views above expressed, that the assessment must be vacated and set aside.

I have re-examined the question presented by the corporation counsel with reference to the effect of the provision in the city charter (section 1, tit. 11, c. 298, Laws 1883) enacting, "And all assessments heretofore levied in the city of Albany, proceedings to vacate, review, or set aside which were not pending January 15, 1883, are hereby validated and confirmed," and I again hold that it is no bar or answer to the pending proceedings, and does not legalize the South Pearl street assessment.   I considered the effect of this provision on the motion to dismiss the proceedings, and I should not again allude to it but for the apparent confidence of the corporation counsel, who cites and relies upon the recent case of *People* v. *Wilson*, 3 N. Y. Supp. 326.   How this decision aids the corporation counsel I am at a loss to discover.   The case decides that the legislature may reassess and reapportion an assessment rendered void because of a defective petition.   This has been the law of the state since 1874.   *In Re Van Antwerp*, 56 N. Y. 261.   The decisions of the highest courts of this state compel me to hold that the so-called confirmatory clause in the charter of 1883 does not legalize this assessment, and for the errors and irreg-

ularities in the proceedings it must be set aside.    *People* v. *Brooklyn*, 71 N. Y. 495; *Dederer* v. *Voorhies*, 81 N. Y. 153; *Watertown* v. *Fairbanks*, 65 N. Y. 588.

### ON MOTION TO DISMISS.

NOTT, J.    These proceedings are founded on title 11 of the charter of the city of Albany, (chapter 298, Laws 1883.)    The petitioners ask to have vacated and set aside an assessment levied upon their property in 1881, for excavating, paving, etc., and laying drains, etc., in South Pearl street, from Gansevoort street to a point 340 feet south of McCarty avenue.    A motion is made by the city and the contractors and their sureties to dismiss the proceedings on various grounds.    For the purposes of this motion, the allegations contained in the petition must be taken as true.    The grounds of the motion of dismissal are:  (1) That the county judge has no jurisdiction in the premises;  (2) that the petitioners have no right to institute these proceedings;  (3) that the legislature has ratified and confirmed the assessment sought to be set aside.

The contention against the jurisdiction of the county judge is that title 11 of the charter is prospective in its operation, and does not apply to assessments levied prior to the passage of the charter.    There are no words in the charter taking away from the county judge the power to review assessments whenever levied.    A similar question was presented in *Re Beams*, to vacate an assessment, (17 How. Pr. 459,) and it was adjudged that the act of 1858, "in relation to frauds in assessments for local improvements in the city of New York," authorizing an application to a justice of the supreme court to vacate any assessment, etc., applies to assessments made either before or after its passage.    Judge INGRAHAM in deciding that case said, (page 461:)  "A full and ample remedy now exists by action against any one attempting to enforce an illegal assessment, although such remedy is difficult, and not often resorted to, on account of its expense, and perhaps uncertainty attending a long litigation.    The legislature have by the present statute provided an easier, cheaper, and more expeditious mode of attaining the same result.    I can consider the proceeding as only affecting or adding to the remedy, and not interfering with vested rights, and, in that view, the statute should be sustained."    To same effect, *In re Beekman*, to vacate assessments, etc., 19 How. Pr. 518.

It seems as the result of these cases, and the familiar principles with regard to statutes affecting the remedy, and the legitimate course of giving to suitors cumulative methods of obtaining relief, that the county judge has jurisdiction in these cases.

Counsel for the motion cite *Chase* v. *Chase*, 95 N. Y. 373, in support of their point that the petitioners had no right to institute the pending proceedings.    I fail to see the application of that case to these proceedings.    What was decided in *Chase* v. *Chase*, *supra*, is stated by Judge EARL in *Moore* v. *Albany*, 98 N. Y. 410:  "In *Chase* v. *Chase*, 95 N. Y. 373, we decided that an assessment which in another action had been held to be invalid did not constitute such a defect in title to land as would justify a purchaser on account thereof to refuse to complete his purchase."    In *Chase* v. *Chase*, *supra*, Judge DANFORTH considered the effect of chapter 550 of the Laws of 1880 upon the assessment, and held, notwithstanding that act, that the assessment was invalid.    He said, (page 381:)  "The act of 1880 limited the effect of existing provisions of law, and in terms repealed inconsistent statutes, and declared a short period of limitation within which proceedings might be taken to vacate or reduce assessments."    Under said act of 1880, passed June 9, 1880, (1 Laws 1880, p. 799, § 2,) proceedings to review assessments were to be taken:  (1) As to all assessments heretofore confirmed on or before the 1st day of November, 1880;  (2) as to all assessments hereafter confirmed within two months after the con-

firmation thereof. To obtain the relief prescribed in the act of 1880, parties interested in old or prior assessments had, therefore, from the date of the passage of the act, June 9th, to November 1st of the same year, a period of about five months. This was the "short period of limitation" referred to by Judge DANFORTH.

But in no sense can the provisions of the Albany city charter be held to constitute a statute of limitation. By section 1, tit. 11, it is enacted: "And all assessments heretofore levied in the city of Albany, proceedings to vacate, review, or set aside, which were not pending January 15, 1883, are hereby validated and confirmed." As the Albany charter was not passed until April 23, 1883, no time was given in which to take proceedings. Whatever, therefore, the effect of this provision has as a confirmatory act, which will be considered further on, it cannot be held to be a statute of limitation. While it is competent for the legislature to pass statutes of limitation prescribing the time within which action shall be brought or proceedings taken on demands or rights already accrued, yet the time must not be so unreasonably shortened as to practically destroy that remedy. *Korn* v. *Browne*, 64 Pa. St. 55; *Call* v. *Hagger*, 8 Mass. 430; *Billings* v. *Hall*, 7 Cal. 1; *Holcombe* v. *Tracy*, 2 Minn. 241, (Gil. 201.) And a statute which allowed only 30 days in which to begin an action was held unconstitutional, as unreasonably and oppressively short. *Berry* v. *Ransdall*, 4 Metc. (Ky.) 292.

The third objection involves the important question how far the legislature may go in the validation of illegal assessments. Chapter 298, Laws 1883, is an act entitled "An act to provide for the government of the city of Albany," (Laws 1883, p. 348.) In and by that act provision is made as follows: "And all assessments heretofore levied in the city of Albany, proceedings to vacate, review, or set aside, which were not pending January 15, 1883, are hereby validated and confirmed." Title 11, § 1, Laws 1883, p. 396. This provision was previously quoted, and is requoted here in connection with the cases bearing thereon. The counsel for the petitioners claim that this provision does not interfere with the present proceedings, or the substantial relief sought by these proceedings. It is very clear that the above-quoted language will not validate or confirm an assessment, whatever the objection may be; and *People* v. *Brooklyn*, 71 N. Y. 495, is a good illustration. This case holds that section 36 of chapter 589 of Laws of 1874, amending the charter of Brooklyn, which confirmed all assessments for local inprovements theretofore laid in said city, did not embrace invalid assessments laid without authority or jurisdiction; and accordingly, where no petition of a majority of the land-owners was presented to the common council asking the work to be done, it was held that the assessment was illegal and void, and was not validated by the act. Judge MILLER in that case said: "When the enactment speaks of 'all assessments heretofore laid,' it evidently does not relate to proceedings which are void on their face, and have no foundation whatever to rest upon." Page 497. In *Dederer* v. *Voorhies*, 81 N. Y. 153, a question was presented, on demurrer to a complaint, as to the effect of the confirming act of chapter 395 of the Laws of 1874, and it was adjudged that although the act was broad, and made the assessment "lawful and in all respects regular, and to be enforced notwithstanding any irregularities in form and substance in the making thereof," it did not apply to or cover fraud in the proceedings. The case of *Tifft* v. *Buffalo*, 82 N. Y. 204, cited and relied upon by counsel, does not conflict with either of the above cases. The *Tifft Case* holds that the legislature has power to adopt and legalize the acts of a municipality, invalid because of irregularity merely in the procedure, where there was a municipal jurisdiction of the subject-matter. See, also, *Ireland* v. *Rochester*, 51 Barb. 414, 433.

The objections urged against the assessments in question are numerous, and, for the purposes of this motion, are to be taken as true. Without attempting

to enumerate all of them, it is sufficient to say that some of the objections bring these proceedings within the cases of *People* v. *Brooklyn, supra,* and *Dederer* v. *Voorhies, supra.* One of the objections taken by the petitioners to the assessment is that the law under which said assessment was made was unconstitutional. This, of course, would be a jurisdictional objection, and the counsel for motion, in answer thereto, claims that this objection would be apparent on the face of the record, and therefore no ground for the relief asked for by the petitioners, and *Stuart* v. *Palmer,* 74 N. Y. 183, is cited. In that case it was held that an action to vacate an assessment upon land, as a cloud upon title, could not be maintained if the law upon which the assessment was based was unconstitutional. It is a familiar rule of equity that chancery will not interfere when the party has an adequate remedy at law, and in assessment cases, if it appeared that the assessment was void on its face, there was no occasion to call into requisition the extraordinary aid of the court of chancery, because the remedy at law is adequate. *Guest* v. *Brooklyn,* 69 N. Y. 506. *Stuart* v. *Palmer, supra,* has no application to this case, as the grounds of opposition by petitioners to an assessment are not restrained by the charter, and the proceeding authorized by it is not purely an equitable one. *In re Upson,* 24 Hun, 650, 89 N. Y. 67, the question of the constitutionality of a law authorizing an assessment was considered and decided in a proceeding analogous to the pending cases. *In re Blodgett,* 89 N. Y. 392, 27 Hun, 12. Without entering upon the merits of the case, and deciding merely the motion to dismiss the proceedings, I hold that the cases must be heard, and the motion is therefore denied.